*628 OPINION of the Court, by
Judge Logan.-
— This '* a su’t Und, in which the appellant derives title under the elder patent, on which he relies ; and the ap-pellees claim under a settlement right granted by the court Gf commissioners,, on the 18th of April 1780, in these words : “ Adam Rough, heir at law to Nicholas Rough, by Patrick Dolan, this day claimed a settlement and pre-emption to a tract of land, in the District of Kentucky, on account of the said decedant’s raising » cropof corn in the country in the year 1776, lying on tjje heacj 0f Rough’s run, a branch of the Kentucky ii-ver, on the north side of the said river, about nve miles above the mouth of Collin’s creek, to include an improvement made by Patrick Doland. Satisfactory proof being made to the court, they are 01 opinion that the said Adam Rough has a right to a settlement of 400 acres of land to include the above location, and the preemption of 10©0 acres adjoining, and that a certificate issue accordingly.”
virtue of this certificate, the said Adam Rough on the 21st day of June 1780, made the following entry ; “ Adam Rough, heir to Nicholas, enters 40©0 acres in Kentucky, by virtue of a certificate, &c. lying on the head of Rough’s run, a branch of Kentucky, on the north side thereof, about five miles above the mouth of ®enn,s creeK» to include an improvement made by Patrick Dovvlan.” Upon this entry the claim has been surveyed, and carried into grant by the said Adam,
Previous to the investigation of this claim, there are some preliminary questions material to be settled, it is made a point by the defendant, that the certificate was from the commissioners contrary to law and equity, through fraud, upon the ground that Nicholas Rough was not of age ; and therefore, not entitled to a setclt0ient and pre-emption for raising corn in the court'? try.
Whether Nicholas Rough was within the description persons entitled by law to settlement and pre-emption rights, was a proper subject ot inquiry for the court of commissioners. It would be equally competent for tjjjs court t0 examine into every fact which was required to justify the claim, as {he fact set up in the pre *629 sent case. If the fact charged in this case is open to inquiry, so may the fact be inquired into, whether Nicholas Rough raised corn in Kentucky, prior to 1778. If the decision of the commissioners is open to inquiry on those points, by those acquiring subsequent claims, then it may be truly said, that settlement and pre-emption rights are the most precarious of all other claims to land. Claims having for their foundation the commissioners’ certificates as the evidence of their validity, however correctly granted, would by such doctrine rendered the most uncertain, inasmuch as they would be exposed to the evidence of long recollections, faint impressions and partial statements; when possessing different, and perhaps more correct information, capable of establishing facts quite different, are dead. This doctrine would defeat the great object the law m constituting the court of commissioners, determine who were entitled to lands under the provisions of the law; thereby perpetuating of record the facts essential tQ the right, and the names of those entitled thereto.
as locative in an e”¡rftye'nc^erea‘¿ ⅞* niRes no mean w„ intendedj & these objects are j¡> far apart that bout would have no land d°w?non to both ⅛ uncertainty.—
Accord. ⅛. vol I3g_; Hornbtck ante
menta by Do-ut°fo near to each other thac a furvey each w¡)1 have u,,d common to Int/hTiUi
Another objection taken to the appellees’ right of recovery is, the opinion or this court on the same claim, in the suit of Craig arid Johnson vs. Ashley, &c.(a) The now appellant derives his title under Craig and Johnson ; and in the case referred to, Ashley, &c, claimed under Adam Rough, the elder, as heir at law of Nicholas Rough his son. But in that cause the appellees, who claim as heirs at law of Adam Rough the younger, were not parties, and consequently could not be barred by that decision of any right to which they might be entitled,
It is admitted by the appellant, that “ Adam Rough, named in the certificate, was the oldest brother of Nicholas Rough in the bill mentioned, and that the complainants are the heirs at law of the said Adam,” And it appears in proof that Nicholas Rough w&s killed by the Indians in the year 1776.
By the then law of descents, the eldest brother, and not the father, was the heir at law. ft follows, therefore, that Adam the younger was the heir at law to Nicholas Rough ; and the appellees, as his heirs, are vested with the title at law to the claim of Nicholas.
*630 But it appears from the bill and exhibit in the eause§; ^at Adam Rough the younger had also sold this ⅛⅛⅛| on the first day of July 1801, to Jacob Stephens, by ⅜⅝ tides of agreement, on condition “ that if said Stephens should gain the above mentioned tract,” he was to make certain payments, and to give a deed to Rough for the land on which he lived, without further payment from him. This instrument .of writing Stephens assigned to Robert Stephens, without recourse, in De-icember 1804., who assigned it on the same terms to James Liggett, in the same month; and Liggett, in March 1806, relinquished to the said Ashley all his tight to whatever land there might be of said tract within Ashley’s and M’Knight’s lines. - .
The title at law'emanating upon this claim is still ia the appellees; and how far the assignee of Stephens could, under the writing and circumstances of the case, have a well founded claim in equity to enforce from them their legal title, seems to be a subject not proper lor decision in the present cause. Indeed the point in the argument oí the cause seemed to be very little relied on, if it were touched at ail ; but it is stated in the pleadings i and Ashley’s interest in his own right is ia no respect the subject of inquiry in this contest. He stands upon the right of the appellees, as their guardian and next friend ; and upon their right this suit must be decided. We shall proceed therefore to an examination of their' claim upon its merits.
Although the decree between Ashley, &c. cannot bar the appellees of their right, still it must be received as auth rrity, so far as it conforms to settled piinciples in the construction of entries, or establishes general rules for their construction, Like other decisions, it claims the weight of a precedent. It is therefore as binding, and no more so, on the appellees, as it would be in any-other case to which it will apply. It is however a fact, that in the construction of entries and the manner ol surveying them, it is impracticable to yield a strict observance to any general, uniform and ceitain rules which can be drviwd, even with regard to those can-taining similar expressions, without doing manifest injustice to sSttie of them, because oí a difference produced irons the situation of the ground, from evidence, and a delineation of the land and objects sailed for, 1⅜ *631 -,⅞ with great delicacy that this court will question die authority of its own decisions ; yet it is its solemn duly to guard against an over-scrupulous and strict observance of its opinions in relation to those who were not parties, and who had never an opportunity of controverting the adverse, or exhibiting the validity of th'eft own claim. The cause before us, like all others, remains to be detet mined according to law and the adjudications of this court, from the most correct and uni-, form rules of construction in similar cases.
The locator describes his land to lie u on the head of Rough’s run,”.and gives such other calls, descriptive of that neighborhood, as, from the evidence, Rough’s run must be taken as sufficiently established. In this respect there seems to be a perfect coincidence of opinion in the courts upon this claim.
The locator having described his land as “ lying on the head of Rough’s run,” proceeds to give a farther description of it by adding the words “ to include an improvement made by Patrick Dolan.”
Several improvements are proven to have been made by Patrick Doran & Co. on the head branches of Rough’s run, as well as on other waters in that neighborhood. Owing to the uncertainty produced with regard to the improvement intended, the court in the case of Ashley, &c. declared the entry void ;r~ because, say they, “ there are no expressions in the entry shewing which of those improvements was intended.” They then proceed to say, that “ what particular piece of land should be held by the entrv, would depend entirely upon the court’s arbitrarily fixing upon one of the improvements in preference to, and in exclusion of the others.”
The correctness of the doctrine will not be controverted, that where there are several objects which equally fit the calls of an entry, that it is void for uncertainty, But the principle is also well established by adjudications of this court, that if an entry, when placed on each of the several objects which produce the uncertainty, will cover part of the same ground, that for so much it is certain and that fargood. In the case of Margan vs. Robinson, Pr. Dec. 269, this doctrine was acted on and has never since been impugned. And in the case of Craig- and Rogers^ decided spring *632 term 1807, Hardin’s Rep. 138, (a) the same principle was recognised, and the claim that far supported. "I'he court say of the adversary claimant in that case, ⅜4 to expect more, would be unreasonable ; because thus far ®1e could not have been deceived by the uncertaintj the entry.”
The true spirit of this doctrine is perfectly consistent with that first mentioned. Special and precise description of the land intended is the thing required. This can only be done by reference to some certain object, which would enable, by reasonable diligence, a 'subsequent locator to ascertain the land thereby intended. But if, from a reference to some object to answer the purpose aforesaid, the locator has omitted to distinguish the one intended from others equally applying to his calls of description, and which would change the position of the entry, it is so far Uncertain and to that extent ought not to be supported. But the reason ceases with the uncertainty produced, and where the reason of the principle ceases, there the principle itself should cease to operate : for it is owing to the several positions and different land which would be covered by the entry when applied to each of the several objects called tor, that the extent of the uncertainty will be found. If, therefore, any two positions to the entry when thus placed, would cover entirely different land, the entry for that reason is void in tots. But so far as the entry would cover the same land, when applied to each of the respective objects, to that extent the uncertainty does not exist, and for so much the entry should be supported. By what is the entry rendered uncertain ? By the bearing and effect of similar objects presented to its call. Then by yielding to the extent of that uncertainty the objection is satisfied.
Hence tt follows that although the principle is in general correct, where several objects equally fit the calls of an entry*, that the entry is void ; yet it is to be understood with the exception already mentioned: for if not, then truly the authority ofethose decisions in the case of Craig and Rogers, &c. Would be without foundation ; and the rights of parties, to a certain and unquestionable part of the land, would be sacrificed to nice and rigid rules of construction, to guard against the possibility of different results from large and small claims.
*633 We tome now to test the case under consideration by d <: authority of th-we decisions, and the reasons wl~.ii h seem to hove dictated them.
Although there are ro expressions in the entry, as was said in the ¡i rnn. r opinion <T this < curt, showing which ft 'hi «-e mwi menfs was intended; stiil it snap' be tt, t, *hrt d ue tee expressions in it showing that some oí ’him were r >t inttne’ed. And here it will be ]].’ r.oob-ei'f, 'hat unless this be the fact, the entry r moot be supposed, owing to the number and rimo*.;-n'uation oj seme of those improvements I rera erdi cRr. Some of the improvi ments shewn1 and relied on in the cause as giving uncertainty to the enitv, rre rot. n the waters of Rough’s run. One is on the waters ot Buck run, about half a mile from the head branches of Hough’s run, separated by a ridge delineated on the plat j and another, which was nun h pressed in argument by the appellant, is supposed lo be on waters ot Dsran’s run, but which sinks. This rr-provement was the most remarkable one made by Dorati, because he camped mostly at it. But it is near a rr.i't f run the head b;at¡ has of Rough’s run, and from the ndge would evuh uly be taken as belonging to a different water course.
With this view of those improvements, we sha!! proceed to examine those on the head watc-ts of Rough"', run, the place which seems the most probable fiom the entry to have attracted inquiry ior the improvi merit intended. Even upon what was called, and what in fact forms the head branches of Rough’s run, there are four improvements laid down, and proven to have been made by Doran 8c Co. or so called and 'understood. One of them consisted of a cabin, and was evidently intended for the improvement of Nicholas Rough. The others consisted of mat king and deadening trees, cutting down bushes, &c.
Which of those improvements was intended, is not expressed in the entry, except so far as ti t call to lie on the head of the run ought to designate the one intended. But the cabin was the lowest urns n the run, and. so far operates against selecting it as the one called for. But although this doubt arises with regard to four improvements, we, rmewithbianding, a»e of opinion that the cairn, in the ,c:rv “ lying o a the head of *634 Rough’s run,” and “ to include an improvement,” Etc. when improvements are shown on the head waters of said water course, shows that improvements on different streams were not intended. We can conceive no rule eí c nnructio * upon expressions associating i:i idea the hi. d of a hr ni h a tul an improvement, which will ju r.\ • inchnion of improvements on other waters thus d:st.:n\ v/bov an improvement is shewn in the vivdnuv < 1 the h ad waters of the stream called for.
Under'his \of th; su'd g th n, the cn<"v must 1>“ d w'lded o<. v Ai -aspect t. > die 1 -nr imp! cements mri'Loaed on th • liea.l UianEn s ol 11 nigh’. Mini. They are so near together, that sum t s • x<‘ wed n,i them respectivelv, will all cover a con ' 1 ’-idle p irt of the same land. We therefore me o! t lion t! it the decree in the court below is correct.
With respect to the objection taken in the cause, arising from, the mistaken call in the entry, off Dolan instead of Doran, it is of «o consequence, a; there is no question giving preference to one, in exclusion of others of the improvements on Rough’s run, and all are taken into consideration, and made to operate equally on the claim tn their separate bearing. It is however abundantly proven, that he was well known by both names. The decree must be affirmed wiui costs.

 Hard. 139.

 Smith vs. Harrow, vol. 1, 102, M'Cracken's beirs vs. Steele, vol. 1. 51.